**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOMAS McKENNA, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>SMART TECHNOLOGIES, INC., DAVID A. MARTIN, NANCY L. KNOWLTON, G.A. FITCH, SALIM NATHOO, ARVIND SODHANI, MICHAEL J. MUELLER, ROBERT C. HAGERTY, MORGAN STANLEY & CO. INC., DEUTSCHE BANK SECURITIES, INC. and RBC DOMINION SECURITIES INC.,<br><br>      Defendants. | No. 11-CV-00583<br><br>Judge Edmond E. Chang |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' JOINT MOTION
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT ................................................................................................................................ 5

    A.     Lead Plaintiff's Choice Of Forum Is Entitled To Substantial Deference .................................................................................................................. 6

    B.     The Convenience Of The Parties And Witnesses Strongly Favors Illinois ........................................................................................................................ 8

    C.     The Situs Of Material Events Favors Illinois ......................................................... 11

    D.     The Interests Of Justice Favor Illinois ................................................................... 13

CONCLUSION ........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amorose v. C.H. Robinson Worldwide, Inc.*,
    521 F. Supp. 2d 731 (N.D. Ill. 2007) ....................................................................................... 7

*Blumenthal v. Management Assistance, Inc.*,
    480 F. Supp. 470 (N.D. Ill. 1979) ............................................................................................ 7

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) .................................................................................................... 5

*General Portland Cement Co. v. Perry*,
    204 F.2d 316 (7th Cir. 1953) .................................................................................................... 9

*General Retirement System of Detroit v. Wells Fargo Mortgage Backed Securities 2006-AR18 Trust*,
    Nos. C 09-1376 SI and C 09-1620 SI, 2009 WL 2137094 (N.D. Cal. July 16, 2009) .............. 7

*International Union, U.A.W. v. Aluminum Co. of America*,
    875 F. Supp. 430 (N.D. Ohio 1995) ......................................................................................... 7

*IP Innovation L.L.C. v. Lexmark International, Inc.*,
    289 F. Supp. 2d 952 (N.D. Ill. 2003) ....................................................................................... 5

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.*,
    No. 02 C 1403, 2002 WL 1586415 (N.D. Ill. July 18, 2002) ........................................... 11, 12

*Metzger v. SleeveCo, Inc.*,
    No. 09-cv-6071, 2010 WL 563073 (N.D. Ill. Feb. 12, 2010) ....................................... 9, 10, 11

*Miller v. SKF USA, Inc.*,
    No. 10 C 6191, 2010 WL 5463809 (N.D. Ill. Dec. 29, 2010) ................................................ 14

*Research Automation, Inc. v. Schrader-Bridgeport International, Inc.*,
    626 F.3d 973 (7th Cir. 2010) ............................................................................................ 13, 14

*Rohde v. Central R.R. of Indiana*,
    951 F. Supp. 746 (N.D. Ill. 1997) ........................................................................................ 2, 9

*Schwarz v. National Van Lines*,
    317 F. Supp. 2d 829 (N.D. Ill. 2004) .................................................................................... 5, 6

*SEC v. Electronics Warehouse, Inc.*,
   689 F. Supp. 53 (D. Conn. 1988), *aff'd*, *SEC v. Calvo*, 891 F.2d 457 (2d Cir. 1989) ............... 6

*SEC v. Nappy*,
   No. 93 C 3446, 1993 WL 420937 (N.D. Ill. Oct. 18, 1993) (Conlon, J.) .................................. 7

*Securities Investor Protection Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) ......................................................................................................7

**STATUTES**

15 U.S.C. § 78aa .............................................................................................................................7

15 U.S.C. § 77k ...............................................................................................................................1

15 U.S.C. § 77o ...............................................................................................................................1

15 U.S.C. § 77v(a) .......................................................................................................................6, 7

28 U.S.C. § 1404(a) ................................................................................................................ *passim*

The City of Miami General Employees' and Sanitation Employees' Retirement Trust ("Lead Plaintiff" or "City of Miami") respectfully submits this Memorandum in Opposition to Defendants' Joint Motion To Transfer Venue Pursuant To 28 U.S.C. § 1404(a).

## **INTRODUCTION**

This securities class action under Sections 11 and 15 of the Securities Act of 1933 turns on the central allegation that the Registration Statement and Prospectus (the "Offering Materials") utilized in the July 20, 2010 initial public offering ("IPO") of SMART Technologies, Inc. ("SMART" or the "Company") contained materially false statements and omissions concerning the Company's business and operations. Evidence concerning the falsity of those statements is primarily located in Canada, where SMART and the majority of the individual defendants are located. The few individual defendants not based in Canada reside in California or London.[1] No individual defendant resides in New York. This Action was properly filed in Chicago – the closest jurisdiction to SMART's Calgary headquarters in which SMART maintains a significant presence, and the closest such jurisdiction to Ohio where Mr. McKenna, the plaintiff who initially filed this Action, resides.

The motion by these primarily Canadian defendants to transfer this Action to the Southern District of New York ("S.D.N.Y.") is nothing but forum shopping. As Defendants concede, not a *single* SMART or NextWindow employee with relevant knowledge is based in New York. Instead, Defendants base their motion entirely on the fact that certain members of the underwriter defendants' deal teams were based in New York. The Defendants fail, however, to meet their

---

[1] The individual defendants that reside in Canada are Nancy Knowlton (SMART's CEO and Director), G.A. Fitch (SMART's CFO), David Martin (SMART's Chairman of the Board) and Martin Mueller (SMART Director). Director Defendants Arvind Sodhani and Robert Hagerty (both SMART Directors) reside in California and Defendant Salim Nathoo (SMART Director) resides in London.

burden of showing that those potential witnesses based in New York have any relevant knowledge with respect to the truth of the Offering Materials. Indeed, conspicuously absent from Defendants' motion are any details about what testimony the members of the underwriters' deal teams in New York would offer. This omission alone requires denial of their motion. *See, e.g., Rohde v. Central R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997) (movant under § 1404(a) "bears the burden of establishing who his witnesses are, what their testimony will be, and how vital that testimony will be to the case") (internal quotation omitted). Significantly, the underwriter defendants' own declarations make clear that the members of their deal teams with the most relevant knowledge (about technology companies and Canadian companies) were located in California and Canada – *not* New York. Even assuming that the underwriters' witnesses are relevant to the falsity of the Offering Materials, Chicago is centrally located between California, Calgary and New York.

Indeed, the notion that the S.D.N.Y. is a more convenient forum for SMART and the individual defendants than this District is absurd. SMART's principal place of business is in Canada, most of the individual defendants reside there and the majority of the evidence relevant to Lead Plaintiff's claims will be found there. There are multiple direct flights from Calgary to Chicago daily and witnesses who leave Calgary in the morning can be in Chicago for lunch. By contrast, witnesses and counsel would be required to lose a full day travelling to and from New York. Tellingly, Defendants fail to mention these facts in their motion.

Finally, Defendants' assertions that this case bears no connection to this District are meritless. Contrary to Defendants' representations in the Offering Materials about the benefits SMART was realizing from its acquisition of NextWindow, that acquisition was driven by the need to resolve patent litigation between the two companies that SMART filed in *this* District. Moreover, it is likely that relevant witnesses will be located in this District. NextWindow's U.S.

2

headquarters were located in this District and the only member of NextWindow's senior management based in the U.S. resides in this District. SMART also maintains offices in this District and conducts regular business here, and the underwriter defendants – all of which are global financial institutions – each have a major presence in Illinois.

In sum, Defendants' motion does little more than articulate their own preference that this litigation be transferred away from this Court to a forum of their choosing. Their mere preference for a transfer, particularly to a forum lacking substantial contacts with the substance of the claims at issue, does not sustain the heavy burden necessary to upset Lead Plaintiff's choice that this case be litigated in the Northern District of Illinois.

## STATEMENT OF FACTS

SMART is a Canadian corporation based in Calgary, Canada, and maintains offices in this District. NextWindow's U.S. headquarters were located in this District and the only member of its senior management based in the U.S. resides in this District. As noted, the majority of the SMART officers named as defendants also reside in Calgary or elsewhere in Canada, while the remaining three individual defendants reside in California or London. None of the individual defendants reside in New York. The underwriter defendants (Morgan Stanley, Deutsche Bank and RBC Dominion Securities) are global financial institutions that maintain a major presence in this District.

In July 2010, SMART and its underwriters sold almost 39 million shares of SMART common stock in an IPO, reaping over $660 million in proceeds. Company insiders liquidated over $510 million of their privately held shares through the IPO. The Offering Materials for the IPO contained materially false and misleading statements and omissions concerning the demand for both SMART's core product (interactive whiteboards) and the interactive touch technologies of NextWindow, which SMART had acquired shortly before the IPO.

3

First, the Offering Materials trumpeted the strong growth prospects for sales of SMART's interactive whiteboards, representing that there was a rapidly growing market for whiteboards and that the Company's leadership position in whiteboard sales, premier brand, large and loyal user base, and focus on creating easy to use products would fuel future growth. In reality, SMART's growth had been largely attributable to government stimulus funds which were already being wound down at the time of the IPO, and the Company had already seen a precipitous (and undisclosed) decline in its sales of interactive whiteboards prior to the IPO.

Second, the Offering Materials assured investors, *inter alia*, that demand for NextWindow's interactive touch products was strong because the Microsoft Windows 7 operating system supported touch capabilities for computer displays. The Offering Materials further represented that NextWindow's pre-existing relationships with leading personal computer display manufacturers and other electronics manufacturers would accelerate the Company's expansion into the consumer markets. Contrary to these representations, demand for NextWindow's products was very weak because almost no touch applications had been developed for the Windows 7 operating system.

On November 9, 2010, the Company shocked investors when the truth about its dismal sales of interactive whiteboards and NextWindow's interactive touch technologies was revealed. SMART cut its fiscal 2011 revenue outlook by $80 million, attributing the decline to weaker growth prospects for its sales of interactive whiteboards in its North American markets and weak demand for NextWindow's products stemming from a lack of touch applications for Windows 7. SMART also revealed that NextWindow's growth would remain stagnant for years, until the next generation Windows operating system came out. In response to this news, SMART's share price for its common stock plummeted over 31% in a single day.

## **ARGUMENT**

The central allegation in this Action is that the Offering Materials contained materially false and misleading statements and omissions concerning the Company's business and operations. Accordingly, the case will turn on evidence of the truth or falsity of these statements. Evidence concerning the truth or falsity of the Offering Materials is primarily located in Canada. *See* Def. Br. at 5 ("the SMART Tech employees most knowledgeable about the IPO and subsequent earnings releases, including those who prepared the Registration Statement and Prospectus, are located in Canada").

Pursuant to 28 U.S.C § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears a heavy burden to show that transfer is warranted. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986) (movant has "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient"); *IP Innovation L.L.C. v. Lexmark Int'l, Inc.*, 289 F. Supp. 2d 952, 955 (N.D. Ill. 2003) (movant "must make a strong showing that transfer is warranted").

In deciding whether transfer is justified, the Court must first determine whether the action might have been brought in the transferee court. *Schwarz v. Nat'l Van Lines*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004). Here, Lead Plaintiff does not dispute that this Action might have been brought in the S.D.N.Y. In this regard, Defendants correctly observe that two different plaintiffs initially filed actions in the S.D.N.Y. relating to this matter. Those cases, however, were voluntarily dismissed after this Action was properly filed in the Northern District of Illinois. Defendants' unsupported speculation about the reasons for those dismissals merits no weight.

Next, the Court must conduct an individualized, case-by-case analysis of whether a transfer would be more convenient for the parties and witnesses and would promote the interests of justice. *Schwarz*, 317 F. Supp. 2d at 833. The Court may consider a number of factors, including: (1) plaintiff's choice of forum; (2) the convenience of the parties and witnesses; and (3) the location of the material events. *Id.* at 835.

Applying these factors, transfer is not warranted because Defendants have not, and cannot, make the "strong showing" necessary to justify such transfer.

**A.     Lead Plaintiff's Choice Of Forum Is Entitled To Substantial Deference**

Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), provides in pertinent part:

> Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

This special venue provision, in contrast to the restrictive requirements of the general venue statute, provides plaintiffs in securities actions with an exceedingly broad choice of venue. As courts nationwide have recognized, Congress, in drafting the venue provision of the securities laws, intended to give defrauded investors the "widest possible choice of forums in which to sue," and this choice of venue is entitled to substantial deference. *SEC v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 74 (D. Conn. 1988) (where an action is governed by a special venue statute, a plaintiff's choice of venue is entitled to even greater deference and will not be displaced without a clear-cut showing of inconvenience), *aff'd*, *SEC v. Calvo*, 891 F.2d 457 (2d Cir. 1989). As the Ninth Circuit put it: "'Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum'. . . and unless the balance of factors is *strongly in favor* of the defendants, the plaintiff's choice of forum should rarely be

disturbed." *Secs. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (emphasis added).[2]

Defendants simply ignore the implications of the special venue provisions and, because none of the cases Defendants cite in their papers deal with the special venue provisions of the Securities Act, they are inapposite.[3] The only recent case in this District to expressly consider the deference due to a plaintiff's choice of forum under the special venue provisions of the federal securities laws determined that it was entitled to substantial deference. *See SEC v. Nappy*, No. 93 C 3446, 1993 WL 420937, at *2 (N.D. Ill. Oct. 18, 1993) (Conlon, J.) (granting substantial deference to the SEC's venue decision under the Securities Exchange Act).[4] Accordingly, plaintiff McKenna's choice to file this Action in the Northern District of Illinois should be accorded substantial deference.[5]

---

[2] Although *Securities Investor* deals with the special venue provisions under Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa, its provisions are identical in depth and breadth to § 22(a) of the Securities Act, 15 U.S.C. § 77v(a). Section 27 reads, in relevant part: "Any suit or action to enforce any liability or duty … may be brought in any such district … wherein the defendant is found or is an inhabitant or transacts business…"

[3] Even if Lead Plaintiff's claims did not involve a special venue provision, Defendants' assertion that Lead Plaintiff's choice of forum "is entitled to no weight" would still be wrong. Indeed, the very cases Defendants rely on make clear that at least "some deference" is always paid to a plaintiff's choice of forum. *See, e.g., Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007); *see also Int'l Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430 (N.D. Ohio 1995) ("although the plaintiff's choice of forum in a class action may be less important than in a non-class action, this does not mean, however, that plaintiffs' choice of forum is deserving of little weight") (internal quotations omitted).

[4] More than thirty years ago, a single district court reached the opposite conclusion, declining to afford substantial weight to plaintiff's choice of forum under the federal securities laws. *See Blumenthal v. Mgm't Assistance, Inc.*, 480 F. Supp. 470, 472 (N.D. Ill. 1979). *Blumenthal*, however, is not persuasive in light of more recent precedent. It was decided six years before the Ninth Circuit's decision in *Securities Investor* and nearly a decade before the *Electronics Warehouse* decision (which Judge Conlon expressly relied upon in *Nappy*). It is also inconsistent with other recent precedent on this issue. *See, e.g., Gen. Ret. Sys. of Detroit v. Wells Fargo Mortg. Backed Secs. 2006-AR18 Trust,* Nos. C 09-1376 SI and C 09-1620 SI, 2009 WL 2137094, at *4 (N.D. Cal. July 16, 2009) ("considerable deference" given to class action plaintiff's choice of forum under Section 22(a) of the Securities Act).

[5] While plaintiff McKenna does not reside in this District, he is a citizen of Ohio, *see* Declaration of Avi Josefson dated July 8, 2011, ¶8, and his decision to file suit in this District was eminently reasonable. This District is closer to Mr. McKenna's residence than the Southern District of New York, is the closest District to Mr. McKenna's residence in which SMART has offices, is the closest U.S. District in which SMART has offices to its headquarters in Calgary.

### B. The Convenience Of The Parties And Witnesses Strongly Favors Illinois

The notion that New York is a more convenient forum for SMART and the individual defendants than this District is absurd, and reveals Defendants' motion for what it really is: forum shopping. SMART's principal place of business is in Calgary – a city north of western Montana, more than 2,000 miles away from New York. As Defendants concede in their motion, there are no SMART employees in New York with relevant knowledge of the allegations of the Complaint.

Four of the individual defendants reside in Canada, including three – Defendants Knowlton, Fitch and Martin – who reside in Calgary. New York is a decidedly inconvenient forum for these witnesses. These witnesses (as well as other SMART witnesses based in Calgary) would be required to lose a full day travelling to New York. By contrast, witnesses who leave Calgary in the morning can be in Chicago for lunch. This District is, therefore, clearly a more convenient forum for SMART and the individual defendants to litigate in than New York. Moreover, the two individual defendants based in the United States reside in California – a state that is even further from New York than Calgary. *See* Def. Br. at 4. This District is closer to California than New York is.

Tellingly, Defendants do not argue that this District is an inconvenient forum for them to litigate this Action. There is good reason for this: SMART and the underwriter defendants, or their corporate affiliates, each maintain offices in this District and conduct regular business here. *See* Josefson Decl., Exs. A-D. Instead, Defendants claim that New York is a more convenient forum than this District because: (1) the "Underwriter Defendants' employees who worked on the IPO were primarily located in New York, Canada, and California"; (2) "the Underwriter Defendants' documents relating to the IPO are maintained in New York, California, or Canada"; and (3) "the

Southern District of New York is … a more convenient forum for the counsel retained by the parties." Def. Br. at 9-10.  None of these arguments has merit.

First, in contravention of more than fifty years of precedent in this Circuit, Defendants fail to meet their burden to show that any of the underwriter defendants' New York-based employees have knowledge relevant to this Action, much less identify what their purported testimony would be and how vital that testimony is to their case.  *See, e.g., Gen. Portland Cement Co. v. Perry*, 204 F.2d 316, 320 (7th Cir. 1953) (affirming denial of transfer motion where defendant failed to identify what purported witnesses' "testimony would be" or "show how vital that testimony would be to the defense of the case"); *Metzger v. SleeveCo, Inc.*, No. 09-cv-6071, 2010 WL 563073, at *3 (N.D. Ill. Feb. 12, 2010) (Darrah, J.) ("The party requesting the transfer has the burden of demonstrating 'who its witnesses are, the nature of their testimony, and how important that testimony will be to the case'") (internal citations omitted); *Rohde,* 951 F. Supp. at 748 (movant "bears the burden of establishing who his witnesses are, what their testimony will be, and how vital that testimony will be to the case") (internal quotation omitted).

At most, members of the underwriters' deal teams could testify to the due diligence they performed (if any), ***not*** the central question of whether the Offering Materials were materially false.  But Defendants' motion conspicuously fails to establish that the underwriter defendants actually conducted any due diligence on SMART's operations, interactive whiteboard sales or NextWindow business, and if they did so, where that diligence occurred and who are the relevant witnesses.  Indeed, according to Defendants' own declarations, virtually all of the members of the underwriter defendants' deal teams with location-specific expertise (Canadian companies) and sector-specific expertise (technology companies) – the ones most likely to have participated in due diligence and therefore have relevant information – were based in California and Canada, not New York.  Thus, at

best, Defendants' motion suggests that there *might* be potential witnesses located in places other than New York, and for which this District is a more central, and convenient, location than New York. Such witnesses would not have information relevant to Lead Plaintiff's allegations or to any defense that SMART or the individual defendants could assert, but to the underwriter defendants' own due diligence defense. Predicating transfer on the basis of potential facts that impact an unasserted defense available to a minority of the defendants, rather than the facts central to Lead Plaintiff's allegations would be to let the tail wag the dog in this Action.

While Defendants have not established that any material witness is based in the S.D.N.Y., Lead Plaintiff – despite the lack of formal discovery – has already identified a material witness that is located in this District. Anthony Uhrick, NextWindow's head of sales for its large format display products and the only member of NextWindow's senior management based in the United States, resides in this District. *See* Josefson Decl., Ex. E. As head of sales for NextWindow's large format display products, Mr. Uhrick should have been keenly aware of the demand (or lack thereof) for NextWindow's products. Given that NextWindow's U.S. headquarters were in this District, that the patent infringement litigation occurred in this District, and that the only U.S. based member of NextWindow's senior management is located in this District, Chicago has a greater connection to this case than New York or any other venue in the United States.

Second, the fact that some unspecified number of documents is located in New York (as well as California and Canada) does not weigh in favor of transfer. As Judge Darrah recently observed, "[d]ocuments are now easily scanned, stored and electronically transmitted; moving documents no longer creates the onerous burden it may once have imposed." *Metzger*, 2010 WL 563073, at *2. As in *Metzger*, Defendants here have not asserted that there is "such a substantial volume of documents" in New York that it would "impose a substantial burden of production" if the

case were to remain in this District. *Id.* Consequently, this factor does not weigh in favor of transfer. *Id.* Moreover, Defendants have failed to establish issues those documents bear upon.

Third, the "convenience of counsel" is simply not a relevant factor to a transfer analysis under § 1404(a). *See, e.g.*, *Kucala Enters., Ltd. v. Auto Wax Co., Inc.*, No. 02 C 1403, 2002 WL 1586415, at *3 (N.D. Ill. July 18, 2002) (Lefkow, J.) ("The convenience and location of counsel have never been accorded weight in a transfer analysis") (quoting *Hemstreet v. Scan-Optics, Inc.*, No. 89 C 5937, 1990 WL 36703, at *4 (N.D. Ill. Mar. 9, 1990)). Moreover, even if the convenience of counsel were a factor, which it is not, Defendants are represented by law firms that publicly tout their "global" and "international" practices.[6] Further, the law firm representing SMART and the Individual Defendants – Sidley Austin LLP – has been based in Chicago and "grown with the city" "for over 140 years."[7] The IPO prospectus identifies both Sidley Austin and Kirkland & Ellis, another Chicago based firm, as U.S. counsel.

Accordingly, this District is clearly a more convenient forum for the parties and witness than the S.D.N.Y., and this factor strongly weighs in favor of denying Defendants' transfer motion.

### C. The Situs Of Material Events Favors Illinois

While the majority of the relevant evidence in this case is likely located in Canada, the situs of material events also favors Illinois. The misstatements in the Offering Materials concern, *inter alia*, SMART's then-recently acquired NextWindow business, and events relating to these misstatementstook place in this District. In February 2009, SMART filed a patent infringement

---

[6] *See* http://www.sidley.com/ourpractice/ (describing Sidley's "global practice"); http://www.milbank.com/en (describing Milbank as "a leading international law firm").

[7] *See* http://www.sidley.com/chicago/ ("Sidley's largest office traces its origins back to 1866. For over 140 years, the firm has grown with the city, and remains one of the largest and respected law offices in Chicago. More than 500 lawyers in the Chicago office work on a broad range of litigation, transactional and regulatory matters.")

lawsuit against NextWindow in this District. *See* Case No. 09-CV-1108, Dkt. No. 1. In its complaint, SMART alleged that it maintained a business presence in the District, and that NextWindow's U.S. headquarters were in this District. *See id.* at ¶¶1-2. Contrary to Defendants' assertion that "the *NextWindow* patent case has nothing to do with this case" (Def. Br. at 7), witnesses have informed Lead Counsel that SMART's acquisition of NextWindow was motivated by a desire to settle the Chicago patent litigation between the two companies. Josefson Decl. at ¶7. It is likely that SMART acquired information about NextWindow, its patents and products, and the demand for those products in connection with this patent infringement litigation.

Moreover, given that NextWindow's U.S. headquarters were in this District, that the patent infringement litigation occurred in this District, and that the only member of NextWindow's senior management based in the United States (Anthony Uhrick) is located in this District, it is likely that communications with SMART relating to the NextWindow acquisition occurred in this District. Significantly, Mr. Uhrick, who is NextWindow's head of sales for its large format display products, would have been keenly aware of the demand (or lack thereof) for NextWindow's products.

Thus, material events underlying the allegations in this Action occurred in this District. By contrast, Defendants have not identified any material events that will be the focus of discovery in this Action that occurred in the S.D.N.Y. First, Defendants' reliance on the fact that SMART was listed on the NASDAQ is misplaced. Def. Br. at 2. Discovery in this Action will focus on the demand for SMART's and NextWindow's products – evidence for which is most likely found in SMART's Canadian offices – not on where SMART's stock was listed. If mere listing on the NYSE or NASDAQ were sufficient to warrant transfer, virtually every securities action would be brought in New York. That is not the law.

In addition, Defendants contend that the Offering Materials were "prepared by defendants and their New York-based counsel in New York, California, and Canada." Def. Br. at 12. Defendants' decision to lump these jurisdictions together is telling, and only underscores that the S.D.N.Y. is *not* the situs of material events in dispute. Defendants concede in their motion that no relevant SMART witness is based in New York, *see* Def. Br. at 5 ("the SMART Tech employees most knowledgeable about the IPO and subsequent earnings releases, including those who prepared the Registration Statement and Prospectus, are located in Canada"), and make no effort to identify any testimony that their "New York-based counsel" would give.[8] Moreover, even if the Offering Materials were prepared in New York, the case will turn on the truth of the Offering Materials' statements, not the mechanics of its preparation. Just as listing securities on New York exchanges does not warrant transfer of every stock case to New York, so does the retention of Wall Street banks to effect a stock offering not require transfer of all securities litigation to New York. There being no reason to believe that any evidence relating to the truth of the Offering Materials' statements is in New York, the situs of material events favors this District as well.

D.     **The Interests Of Justice Favor Illinois**

The 'interests of justice' analysis relates to the efficient administration of the court system, not the merits of the underlying dispute, and looks at factors such as where the litigants are more likely to receive a speedy trial and, in diversity cases, having judges familiar with the applicable state law try the case. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). As Defendants acknowledge, the relevant statistics show that cases are

---

[8] According to Defendants' papers, IPO counsel for SMART was actually based in California as well as New York. Defendants have made no effort to detail what duties were performed by counsel in each location. Moreover, inasmuch as SMART's IPO counsel is the same as their litigation counsel (Sidley Austin), they should be presumed to be willing to cooperate in the Chicago litigation.

13

resolved more quickly in this District than in the S.D.N.Y. *See* Def. Br. at 14. None of the claims asserted in this Action arise under state law; consequently, this factor is inapplicable.

Though none of these factors weigh in their favor, Defendants contend that plaintiffs have engaged in "forum- and judge-shopping" and, thus, the interests of justice support transfer. Def. Br. at 13. This is nonsense and, in fact, the opposite is true: it is Defendants who are engaged in forum-shopping. First, as set forth above (*see* n. 5), plaintiff McKenna's decision to file a complaint in this District was eminently reasonable. This District is closer to Mr. McKenna's residence (Ohio) than the S.D.N.Y., is the closest District to Mr. McKenna's residence in which SMART has offices, and is the closest U.S. District in which SMART has offices to its headquarters in Calgary.

Second, Defendants' contention that this Action would have been transferred to the S.D.N.Y. for consolidation with the first-filed cases "[h]ad events taken their ordinary course," Def. Br. at 3, is specious. As the Seventh Circuit has recently made clear, "this circuit does not rigidly adhere to a first-to-file rule," and courts facing a transfer request "should do no more than consider the order in which the suits were filed among the factors it evaluates under 28 U.S.C. §1404(a)." *Research Automation*, 626 F.3d at 980, 982. As set forth above, the convenience of the parties and witnesses and material events underlying the litigation strongly favor this District over the S.D.N.Y. Moreover, no material developments had occurred in the New York cases. Consequently, there is no reason to believe that this case would have been transferred to the S.D.N.Y. had the New York cases not been voluntarily dismissed. *See Miller v. SKF USA, Inc.*, No. 10 C 6191, 2010 WL 5463809, at *5 (N.D. Ill. Dec. 29, 2010) (Leinenweber, J.) (denying motion to transfer case to district of first-filed suit where balance of considerations favored this District and no "significant developments or proceedings" had occurred in first-filed action).

Third, there is nothing nefarious about the dismissal of the New York actions and Defendants baseless speculation to the contrary should be disregarded. Duplicative motions for appointment as lead plaintiff were filed in this District and the S.D.N.Y. Recognizing that it did not serve the interests of either the parties or the courts to have these duplicative motions proceed simultaneously in both fora, and recognizing that the presumptive Lead Plaintiff had filed in both Districts, counsel for the named plaintiffs in the New York actions determined to voluntarily dismiss their actions. There is untoward about those dismissals which, but for Defendants' desperate effort to transfer this case to New York, would have resulted in a more efficient litigation.

Indeed, contrary to Defendants' assertions, the facts strongly establish that it is Defendants who are seeking to forum-shop or judge-shop. As discussed above, the S.D.N.Y. is a decidedly inconvenient forum for SMART and the individual defendants to litigate this Action given that Calgary is more than 2,000 miles away from New York. In addition, the only individual defendants based in the United States are based in California – far closer to this District than the S.D.N.Y. Moreover, Defendants have failed to establish that even a *single* witness with relevant testimony is based in the S.D.N.Y. Accordingly, Defendants' motion can only be viewed as a transparent attempt to forum shop and, thus, the interests of justice, like each of the factors in the transfer analysis, strongly favors Illinois.

## CONCLUSION

For the reasons set forth herein, Defendants' motion to transfer should be denied.

Dated: July 8, 2011

                              BERNSTEIN LITOWITZ BERGER
                                &GROSSMANN LLP

                              By: /s/ Avi Josefson
                              Avi Josefson
                              Boaz A. Weinstein
                              1285 Avenue of the Americas
                              New York, New York 10019
                              Telephone: 212-554-1400

                              Court-appointed Lead Counsel for the Class